The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

Nicholas S. KRPAN, Respondent.

No. 67619.

Supreme Court of Iowa.

March 17, 1982.

Lee H. Gaudineer, Jr., Des Moines, for complainant.

William L. Kutmus, Des Moines, for respondent.

HARRIS, Justice.

On the basis of events in two unrelated attorney-client relationships the grievance commission recommended a public reprimand for Nicholas S. Krpan, an attorney. There are a number of incidents in each association and it seems that most material facts are hotly disputed. If we agree with the commission in accepting Krpan's version the recommended reprimand is appropriate. If we were to accept the complainant's version of the facts a much more severe punishment would be demanded. The question then is whether, as the commission found, the respondent was unprofessionally inattentive and ran "a very sloppy practice, keeping poor records, [and failed] . . ." to properly apprise his clients, or whether, as the complainant's witnesses would have it, he was also deceitful. Neither choice does credit to the respondent. Although the matter is not free from doubt we come down on our de novo review with the findings of the commission.

In each matter the committee relied mainly on the testimony of one of respondent's clients. In the first matter Donald Wayne Armstrong, Jr. employed respondent to represent him in a tort suit against the city of Des Moines. Armstrong sustained damages when a motorcycle he was operating struck a pothole on a city street. It is undisputed that the respondent was retained and failed to file the suit. Respondent admits he was approached by Arm-

strong and agreed to bring suit but says he forgot about the matter until the statute of limitations had run. According to Armstrong and his witnesses respondent deceived him by pretending he had brought the suit and that it was progressing in the regular order.

The factual dispute culminates in wildly divergent versions of a settlement. According to the respondent he settled with Armstrong for his own negligence by paying Armstrong $1400 from his own funds. At the time, according to respondent, Armstrong executed a blank release and waiver. According to Armstrong the respondent's masquerade of a pending suit was carried through the settlement process. He stated that respondent took him to the city hall, left him outside while he entered, and pretended his claim reached termination there and that the $1400 was recovery, not from his attorney, but from the city of Des Moines.

Respondent also represented Mark S. McCoy in a number of criminal and related matters. McCoy was charged with possession of a controlled substance (§ 204.401(3), The Code), and with possession with intent to deliver a controlled substance (§ 204.-401(1), The Code). In the possession with intent to deliver charge respondent obtained a jury acquittal. McCoy pled guilty to possession and received a maximum sentence. Respondent and McCoy, feeling the sentence was unusually harsh, appealed.

An appeal bond of $2000 was posted from money furnished by McCoy's mother. McCoy filed it with the Iowa district court for Polk County. While that appeal was pending McCoy was again arrested for possession with intent to deliver a controlled substance. Incident to that arrest the police found $932 cash and retained it as evidence. That case also went to trial. McCoy was convicted and received an indeterminate ten year sentence. There was an unsuccessful appeal from this sentence and, as a part of that appeal bond, McCoy's mother deposited in district court the abstract of title to her home and a quit claim deed. Although the second conviction was affirmed on appeal, respondent obtained a favorable result in defendant's sentence.

Respondent also tried a third case for McCoy involving the confiscation of his automobile because it contained contraband. In this effort he was unsuccessful. Respondent also represented McCoy in seeking a review by our court of one of the court of appeals decisions in the first two appeals.

The commission found that for all this representation respondent rendered services easily worth $14,000, though no office records were kept on his time or the amount of cash he advanced. No statement was ever rendered the McCoys for respondent's services; the respondent merely concluded that if he obtained the $2000 deposited as bail money in the first case and the $932 used as evidence in the second case he would "call it even." McCoy was unemployed and respondent felt he could pay no more. The respondent obtained the release of the $2000 bail money and applied for return of the $932 and deposited both these amounts in his firm account.

It is clear that McCoy's mother always assured respondent she would be responsible for her son's attorney fees. Nevertheless she did not learn that respondent had obtained and deposited the $2000 until she made many requests for its return (as well as the return of her abstract and deed). Both McCoy and his mother testified respondent had done "beautiful work" for McCoy. We adopt as our own the findings of the commission.

According to DR7–101(A)(1) and (2) a lawyer should seek the objectives of his client through reasonably available means permitted by law. A lawyer must carry out a contract of professional employment. According to DR9–102(B)(1) a lawyer must promptly notify a client of the receipt of the client's funds, securities, or other properties. Under DR9–102(B)(3) a lawyer must maintain complete records of all funds, securities, and other properties of a client coming into the lawyer's possession and render appropriate accounts to the client. Respondent plainly failed in these

obligations for which he should be and is hereby publicly reprimanded.

ATTORNEY REPRIMANDED.